UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | | |
|---|---|---|
| LINDA THURMAN, et al., | } | |
| | } | |
|     Plaintiffs, | } | |
| | } | |
| v. | } | Case No.: 2:12-cv-00724-RDP-TFM |
| | } | |
| JUDICIAL CORRECTION SERVICES, | } | |
| INC., et al., | } | |
| | } | |
|     Defendants. | } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss Second Amended Complaint (Doc. # 49), Plaintiffs' Motion for Partial Summary Judgment (Doc. # 85), and Defendants' Motion for Summary Judgment (Doc. # 109). The motions have been fully briefed. (*See* Docs. # 52, 99, 104, 116, 118). The court held oral argument for the motions on July 24, 2017. After careful review of the parties' submissions and the Rule 56 record, the court concludes that while Plaintiffs' motion for partial summary judgment is due to be denied, Defendants' motion for summary judgment is due to be granted.[1]

## I.    Procedural History

In Plaintiffs' Second Amended Complaint, Plaintiffs Linda Thurman and Courtnee Carroll raise four categories of claims against Defendants Judicial Correction Services, Inc. ("JCS") and Correctional Healthcare Companies, Inc. ("CHC"). (*See* Doc. # 53 at ¶¶ 30-41). First, Plaintiffs claim that they are entitled to declaratory judgments against Defendants. (*Id.* at ¶ 32). Specifically, Plaintiffs ask the court to declare that: (1) JCS violated state and federal law

---

[1] Based upon the court's ruling on Defendants' motion for summary judgment, their motion to dismiss the complaint is now moot.

by commanding probationers to pay fines and fees pursuant to documents that were not lawful orders of probation; (2) JCS violated state and federal law by commanding or coercing monetary payments from individuals above the relevant statutory maximums; (3) JCS violated state and federal law by imposing probation for periods longer than the relevant statutory maximum; (4) JCS was unjustly enriched by its conduct; and (5) JCS obstructed justice and violated Plaintiffs' equal protection rights. (*Id.*). Second, Plaintiffs allege that Defendants were unjustly enriched by their collection of fees without legal authority and "should be ordered to disgorge the ill-gotten gains." (*Id.* at ¶ 35). Third, they allege that Defendants unlawfully obstructed the administration of law, in violation of Alabama Code § 13A-10-2, by warning the named Plaintiffs to not contact the municipal court about probation matters. (*Id.* at ¶¶ 20, 39-41). Finally, Plaintiffs allege that Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at ¶¶ 40-41).

In January 2013, Defendants filed a motion to dismiss the Second Amended Complaint. (Doc. # 49). In that motion, Defendants argue that: (1) the Second Amended Complaint fails to state a claim for relief; (2) the Second Amended Complaint fails to allege a causal connection between Defendants' conduct and Plaintiffs' alleged injuries; (3) Defendants are entitled to absolute quasi-judicial immunity; (4) JCS did not act under the color of state law; and (5) the Second Amended Complaint does not plead fraud with particularity. (*See generally* Doc. # 50).

In April 2013, Plaintiffs filed a motion for partial summary judgment. (Doc. # 85). In their summary judgment motion, Plaintiffs seek a declaratory judgment that JCS was not authorized to collect probation fees from orders that had not been signed by a municipal court judge. (*See id.* at 2). In turn, Defendants filed a motion for summary judgment in September 2013. (Doc. # 109).

## II.    Factual Background[2]

Plaintiffs' claims arise from their traffic cases before the Municipal Court for Montgomery, Alabama ("Municipal Court"). The court addresses the material facts regarding each Plaintiff's claims, in turn.

### A.    Courtnee Carroll

In April 2010, Montgomery police issued three tickets to Plaintiff Carroll for failing to use a child restraint, switching tags, and driving without a license. (*See* Doc. # 99-14 at 2, 5, 8). When Carroll received the tickets, she called the Municipal Court and asked them how much she would be required to pay for the tickets. (Doc. # 85-3 at 6-7). A Municipal Court employee told Carroll that she would be required to pay approximately $500 for the three tickets. (*Id.* at 7).

In May 2010, Carroll pled guilty to all three charges. (*See* Doc. # 99-14 at 3, 6, 9). Carroll went to the Municipal Court on the assigned court date. (Doc. # 85-3 at 6). She informed an employee at the Municipal Court's window that she wanted a payment plan, and the employee instructed her to wait by a door. (*Id.* at 9). Carroll has testified that she wanted to admit that she was guilty of the offenses so that she could pay off the fines and not wait. (*Id.* at 10). Moreover, she desired to pay off the fines and fees levied against her. (*Id.*). The Municipal Court imposed $25 fines for the child-restraint and switched-tag offenses and a $75 fine for driving without a license. (*See* Doc. # 99-14 at 3, 6, 9). The Municipal Court also charged Carroll $113 in court costs for each offense. (*See id.*). The Municipal Court's orders regarding the tickets state that it referred Carroll to JCS. (*See id.*) (statement stamped onto the orders).

---

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

On May 14, 2010, Carroll signed an "order of probation," issued on the Municipal Court's letterhead. (*See* Doc. # 85-2 at 2). The order placed Carroll on probation for 12 months. (*Id.*). It directed her to pay a $10 set-up fee and a $40 per month fee to JCS. (*Id.*). It also directed her to pay $140 per month towards the amounts she owed to the Municipal Court and JCS. (*Id.*). The order listed the fines and costs Carroll owed for her April 2010 offenses. (*Id.*). But, the probation order also stated that Carroll owed $341 from an earlier case. (*Id.*).

Along with the financial obligations, Carroll's order of probation directed her to report to a probation officer as instructed and to notify the probation officer of any change in residence or employment. (*Id.*). It instructed Carroll to work during her probation, unless she was a full-time student. (*Id.*). The order warned Carroll that she could be arrested for violating any term of probation and that her probation could be revoked "accordingly." (*Id.*). Carroll and a JCS employee each signed the order. (*Id.*). But, the signature block for the Municipal Court remained blank. (*Id.*).

According to Plaintiffs, Carroll also received a document from JCS with additional probation instructions. (Doc. # 85-4 at 2). JCS's document directed Plaintiff to not contact the Municipal Court. (*See* Doc. # 85-4 at 2) ("<u>Do not contact the Municipal Court</u> they will be unable to help you.") (emphasis in original). Instead, JCS directed Carroll to contact her probation officer, Elizabeth Allen, with any questions. (*Id.*).

Carroll has conceded that no one forced her to sign the probation order. (Doc. # 111-1 at 5). Nor did anyone coerce or command her to make monthly payments to JCS. (*Id.* at 12). But, she has testified that she was unaware of the probation sentence and believed that the forms she signed were "the process of the payment plan." (Doc. # 85-3 at 13). Carroll paid off her financial obligations for the three offenses by January 2011. (*See generally* Doc. # 99-7).

### B. Linda Thurman

According to the Municipal Court's electronic records, in January 2012, Plaintiff Thurman received a citation for failing to possess or display insurance. (Doc. # 99-8 at 1-2). Thurman has testified that she was guilty of the offense and agreed to plead guilty to it. (Doc. # 99-3 at 5). She pled guilty to the offense by signing her traffic ticket. (*Id.* at 5-6). Thurman wished to pay the fine imposed by the Municipal Court "over an extended period of time." (*Id.* at 7).

On February 10, 2012, Thurman signed an "order of probation," issued on the Municipal Court's letterhead. (Doc. # 85-11 at 2). The order directed Thurman to pay $279 in court costs for failing to possess or display insurance.[3] (*Id.*). It instructed her to pay $140 per month towards the amount she owed. (*Id.*). It also contained the same probation conditions as those in Carroll's order, including the obligation to pay a one-time fee and monthly fees to JCS. (*Id.*). Thurman and a JCS employee signed the order of probation. (*Id.*). Judge Les Hayes's last name was handwritten into the order, along with a set of initials. (*Id.*).

According to Thurman, she voluntarily agreed to the conditions of probation. (Doc. # 99-3 at 8-9). Although she agreed to sign the probation order, she recalled that she did not have an opportunity to choose whether to pay the $40 probation fee to JCS. (*Id.* at 9). She did not consider challenging the ticket before one of the Municipal Court's judges. (*Id.* at 10-11).

Thurman has testified that a JCS employee instructed her to bring $35 or $40 with her to scheduled probation appointments. (*Id.* at 7-8). JCS employees threatened to issue arrest warrants against her if she did not bring "at least $5.00" with her to a probation appointment. (*Id.* at 13). Thurman paid off the amounts owed for the citation on August 3, 2012. (Doc. # 99-8

---

[3] The Municipal Court's records state, though, that Plaintiff received a traffic fine of $150. (Doc. # 99-8 at 2). This fine is not reflected in the order of probation.

at 1).  On that same day, the Municipal Court entered her guilty plea and the sentence against her.  (*Id.*).

### C.    Other Material Facts

Tonia Hamby, a JCS employee, has testified that the Municipal Court had an unwritten policy for placing individuals on probation at the Municipal Court.  (Doc. # 99-12 at 5-6).  If a defendant appeared at the clerk's window and agreed to be placed on probation with JCS, a JCS intake specialist would sign the defendant up for probation, write the judge's name on the probation order, and initial the order.  (*Id.* at 6).  Judge Hayes memorialized the Municipal Court's probation policy with JCS in a 2013 standing order.  (Doc. # 99-11).  The standing order explained that, if the defendant owed less than $250, the Municipal Court would grant a 30-day extension to pay the amount owed.  (*Id.*).  The Municipal Court placed defendants "with JCS" if they owed less than $1500 to the Municipal Court and requested a payment plan for the amounts owed.  (*Id.*).  If a defendant owed more than $1500 and requested a payment plan, the Municipal Court held a hearing before a judge to determine whether the defendant should be placed with JCS.[4]  (*Id.*).  According to the general order, the Municipal Court instituted these policies in June 2009.  (*Id.*).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[4] Judge Hayes admitted to the Alabama Court of the Judiciary that he had previously "placed some municipal court defendants who appeared before him on what was nominally referred to in the court's order as 'probation' even though they had not received a suspended sentence or any jail time, but had been given only fines and court costs."  *In the Matter of: Armstead Lester Hayes III*, 2017 WL 132929, at *2 (Ala. Ct. of the Judiciary Jan. 5, 2017).

(1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not

rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV. Analysis

After careful review of the parties' briefs, and with the benefit of oral argument, the court concludes that Defendants are entitled to summary judgment on all claims in this suit. As explained below, Plaintiffs' unjust enrichment claim and their request for the court to declare JCS's administration of purportedly unlawful orders of probation to be unlawful are due to be dismissed without prejudice under the *Rooker-Feldman* doctrine due to the court's lack of

subject-matter jurisdiction.[5]  In the alternative, Defendants are entitled to summary judgment on

Plaintiffs' unjust enrichment claim because the claim either fails under the voluntary payment

doctrine or constitutes an impermissible collateral attack on the municipal court's judgments.

Plaintiffs' claims for obstruction of law and violations of equal protection are due to be

dismissed for failure to state a claim upon which relief can be granted.  Finally, the named

Plaintiffs lack standing to seek declaratory relief regarding probation terms or fines above the

relevant statutory maximums.

A. **The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims for Unjust Enrichment and a Declaratory Judgment Regarding the Collection of Fines Under Purportedly Unlawful Probation Orders**

Among other arguments, Defendants seek summary judgment because they believe that

the *Rooker-Feldman* doctrine forecloses this court's review of Plaintiffs' claims.  (Docs. # 99 at

6-8; 110 at 2 n. 1).  According to Defendants, Plaintiffs seek a ruling from this court that their

probation orders are a void nullity.  (Doc. # 99 at 7).  Defendants insist that Plaintiffs cannot seek

such a ruling from this court under the *Rooker-Feldman* doctrine.  (*Id.*).  Indeed, Defendants

claim that the *Rooker-Feldman* doctrine, as applied by the Eleventh Circuit, extends to claims

that even indirectly challenge a state court's judgment.  (*Id.* at 7-8).

Plaintiffs respond that the Supreme Court's opinion in *Exxon Mobil Corp. v. Saudi Basic

Industries Corp.*, 544 U.S. 280 (2005), limited the scope of the *Rooker-Feldman* doctrine.  (Doc.

_____

[5]  At oral argument, Defendants' counsel contended that Plaintiffs' claims were due to be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. # 162 at 133-34).  Plaintiffs note in their supplemental brief that Defendants did not present a *Heck* issue in their motion to dismiss, motion for summary judgment, or opposition brief to Plaintiffs' partial motion for summary judgment.  (Doc. # 161 at 6).  Moreover, Plaintiffs claim that *Heck* does not apply in this action because they have not brought suit under 42 U.S.C. § 1983.  (*Id.* at 7).  The court agrees with Plaintiffs that *Heck* does not apply to their action because they have not brought suit under § 1983.  The *Heck* opinion addressed the "intersection" between § 1983 and 28 U.S.C. § 2254.  512 U.S. at 480.  It held that "a § 1983 plaintiff" must prove the reversal, expungement, or invalidation of a state-court criminal judgment or sentence in order to recover damages for a constitutional violation that would necessarily imply the unlawfulness of the plaintiff's conviction or sentence.  *Id.* at 486-87.  Defendants have not cited, and the court has not found, any authority extending the *Heck v. Humphrey* bar to claims brought under the court's diversity jurisdiction.

9

# 104 at 6-7). They argue that the *Rooker-Feldman* doctrine does not apply where a plaintiff challenges the actions of a defendant, rather than a state court decision. (*Id.* at 7). Plaintiffs insist that they challenge JCS's unlawful collection of fees, rather than their putative orders of probation. (*Id.* at 8). Moreover, as they have explained, they do not contest the underlying Municipal Court judgments, the Municipal Court's imposition of fines, or the Municipal Court's imposition of court costs. (*Id.* at 9). Additionally, Plaintiffs argue that they should not be considered state-court losers because they never brought a claim against JCS in state court. (*Id.* at 11).

"The *Rooker-Feldman* doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Cormier v. Horkan*, 397 F. App'x 550, 552 (11th Cir. 2010) (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)). The *Rooker-Feldman* doctrine provides that federal district courts lack authority to review "final judgments of a state court."[6] *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Nicholson v. Shafe*, 558 F.3d 1266, 1271 (11th Cir. 2009)). This narrow doctrine forecloses a federal district court from considering "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

---

[6] In their supplemental brief, Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply to suits brought under diversity jurisdiction, rather than federal question jurisdiction. (Doc. # 161 at 1-2). The Fifth, Seventh, Ninth, and Tenth Circuits disagree. *See, e.g.*, *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003) (asserting that two non-applicable statutory exceptions exist to the general rule that federal trial courts lack jurisdiction to review state-court judgments); *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) ("The *Rooker-Feldman* doctrine was originally stated as a limitation on federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343; today no one doubts that it is equally applicable to diversity litigation."); *Morris v. Wells Fargo Bank*, 677 F. App'x 955, 957 (5th Cir. 2017) (citing *Bergquist*); *Segler v. Felfam Ltd. P'ship*, 324 F. App'x 742, 743 (10th Cir. 2009) (citing *Noel*) *See also Exxon Mobil*, 544 U.S. at 291 (stating that the *Rooker-Feldman* doctrine can prevent a district court from exercising federal question or diversity jurisdiction). In light of these authorities, the court finds that Plaintiff's reliance on diversity jurisdiction does not preclude the court from applying *Rooker-Feldman*. If Plaintiffs had originally filed this action in state court, the court would be faced with the issue of whether remand was warranted pursuant to the *Rooker-Feldman* doctrine. But, Plaintiffs directly filed this suit in federal court; no remand issue is presented. (*See* Doc. # 1).

review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. *See also id.* at 293 (describing the "paradigm situation" for *Rooker-Feldman* preclusion as one where a plaintiff seeks "to undo the [state-court] judgment in its favor"). According to the Supreme Court, *Rooker-Feldman* does not prevent a party from litigating a matter previously litigated in a state court proceeding. *Id.* at 293. Indeed, as the Supreme Court has expressly recognized, state-law preclusion, rather than *Rooker-Feldman* preclusion, should be considered when analyzing an independent claim from that raised in a state court that "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Id.* (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Nevertheless, after *Exxon Mobil*, the *Rooker-Feldman* doctrine continues to bar "federal court jurisdiction where the issue before the federal court [is] 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012) (explaining that the inextricably intertwined standard continues to apply after the Supreme Court's narrowing of the *Rooker-Feldman* doctrine in *Exxon Mobil* and *Lance v. Dennis*, 546 U.S. 459 (2006)) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). In *Alvarez*, the Eleventh Circuit held that the *Rooker-Feldman* doctrine barred a state prisoner from challenging a state court's denial of post-trial DNA testing through a § 1983 action. *Alvarez*, 679 F.3d at 1263. It distinguished a plaintiff's as-applied challenge to the state court's handling of his particular motion for post-trial testing from a § 1983 challenge to a state's DNA access statute, which would not be barred by the *Rooker-Feldman* doctrine. *Id.* (distinguishing

Alvarez's case from the § 1983 case considered by the Supreme Court in *Skinner v. Switzer*, 562 U.S. 521 (2011)).

Following *Exxon Mobil*, the Eleventh Circuit, in an unpublished opinion, upheld the dismissal of an action that sought an order declaring state court rulings to be void. *Hirschhorn v. Ross*, 250 F. App'x 916, 916 (11th Cir. 2007). And, as a member of the undersigned's court has explained, federal courts lack subject-matter jurisdiction under *Rooker-Feldman* "only if the relief requested requires [the federal court] to determine that the state court decision was wrong, or otherwise should be voided." *Blackburn v. Calhoun*, 2008 WL 850191, at *18 (N.D. Ala. Mar. 4, 2008), *aff'd*, 296 F. App'x 788 (11th Cir. 2008). *See also Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (explaining that the *Rooker-Feldman* doctrine bars a federal court from considering a claim "[i]f the source of the injury is the state court decision"); *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003) (explaining that the *Rooker-Feldman* doctrine prevents review of a claim that requests voiding a state court's judgment)

In *Abbott*, the Sixth Circuit considered whether the *Rooker-Feldman* doctrine barred claims against state entities for converting pension benefits. *See* 474 F.3d at 326, 329. Before that case was filed, the Michigan Supreme Court had upheld a law directing prisoners to assign their pension payments to a prison warden, who acted as a receiver, and had denied a prisoner's ERISA claim against the state statute. *Id.* at 327. A state court had ordered the *Abbott* plaintiffs to assign their pension payments to the prison warden for distribution to the state of Michigan and their families. *Id.* The plaintiffs then sued the state of Michigan, Michigan executive departments, and state officials under the Due Process Clause, ERISA, and state law. *Id.* The Sixth Circuit affirmed the district court's dismissal of the action under the *Rooker-Feldman*

doctrine, explaining that the injuries alleged were caused by the state court's orders rather than any official's actions. *Id.* at 329.

> In this case, the plaintiffs are ostensibly complaining of injuries caused by the actions of third parties—the conversion of their pension benefits by state officials—but those actions were the direct and immediate products of the state-court SCFRA judgments. The plaintiffs' claims and arguments make this clear: They assert that the state courts erred in issuing the SCFRA judgments and do not claim that the defendants have injured them in any way except by strictly executing those judgments. Accordingly, the plaintiffs' claims of specific injuries that they have suffered are actually challenges to the state-court SCFRA judgments and are barred by the *Rooker–Feldman* doctrine

*Id.*

Here, certain of Plaintiffs' claims are due to be dismissed under the *Rooker-Feldman* doctrine. First, the *Rooker-Feldman* doctrine bars the court from considering Plaintiffs' request to declare JCS's administration of purportedly unlawful orders of probation to be unlawful. (*See* Doc. # 53 at ¶ 32(a)). Like the claims at issue in *Abbott*, this request for declaratory relief expressly rests on JCS's enforcement of state court orders and requires the court to find that those orders "are not lawful orders of probation." (*Id.*). This court lacks subject-matter jurisdiction to review and reject those state court orders. *Exxon Mobil*, 544 U.S. at 284.

Moreover, Plaintiffs' unjust enrichment claim, which is premised on the assertion that JCS received "ill-gotten gains" from collecting monies under the orders of probation, cannot be considered by the court under *Rooker-Feldman* either. (*See* Doc. # 53 at ¶ 35). For the court to conclude that JCS's fees were ill-gotten gains, it would necessarily have to find that the orders of probation did not authorize JCS to collect those fees because they were nullities.[7] Accordingly,

---

[7] Because this count states that Defendants were unjustly enriched by the "foregoing alleged activities" described earlier in the complaint, it is somewhat unclear what actions led to JCS receiving ill-gotten gains. The Second Amended Complaint could be read to allege that JCS received unlawful gains when it collected monetary payments from probationers for periods of time that exceeded the two-year statutory maximum. (*See* Doc. # 53 at ¶ 32(b)). But, neither Carroll nor Thurman possess standing to bring such a claim because their terms of probation lasted less than two years. (*See generally* Docs. # 99-7; 99-8).

the claim ultimately asks the court to review and reject the orders of probation that purportedly justified JCS's collection of monies from Carroll and Thurman.  This the court cannot do.  *Exxon Mobil*, 544 U.S. at 284**.**  Further, as Plaintiffs' unjust enrichment claim is inextricably intertwined with the Municipal Court's probation orders, logically, that claim can only succeed if the court finds the probation orders to be invalid.  *Cf. Alvarez*, 679 F.3d at 1262-63.  As in *Alvarez*, Plaintiffs have raised a claim contesting the legal effect of their individual probation orders, rather than a more abstract constitutional claim against the Municipal Court's window procedure.  *See id.* at 1263 (explaining why an as-applied challenge to a denial of post-conviction DNA testing is distinguishable from a § 1983 suit challenging state-court rules for bringing motions for post-conviction DNA testing).  For these reasons, Plaintiffs' unjust enrichment claim and first request for declaratory relief are due to be dismissed without prejudice, pursuant to the *Rooker-Feldman* doctrine.

Plaintiffs' attempt to distinguish JCS's conduct from the orders of probation is unconvincing.  By all accounts, JCS collected the amounts owed to itself and the Municipal Court in execution of the "orders of probation."  *Cf. Abbott*, 474 F.3d at 329 (explaining that the state defendants had collected monies owed to the state under express state court judgments).  Thus, although Plaintiffs' claim purportedly is based on the actions of JCS, it is actually based on the "direct and immediate products" of the Municipal Court orders they seek to declare void.  *Cf. id.*

In their supplemental brief, Plaintiffs argue that the *Rooker-Feldman* doctrine should not bar Plaintiff Carroll's unjust enrichment claim because her state court probation order was not final until the Municipal Court's records reflected the probation order.  (Doc. # 161 at 3).  That argument misses the mark.  Indeed, the records available to the court reveal that Carroll pled

guilty to the charges in May 2010 and signed a probation order in May 2010 as well. (Docs. # 85-2 at 2; 99-14 at 3, 6, 9). Under Alabama law, Carroll could have appealed the judgments and associated sentences well before this suit was filed in August 2012.[8] *See* Ala. R. Crim. P. 30.1(a) (permitting a municipal court defendant to appeal his or her conviction to a circuit court within 14 days of the judgment).

Plaintiffs also claim in their supplemental brief that *Rooker-Feldman* should not bar their claims because they lacked a reasonable opportunity to raise legal challenges to their probation orders before the Municipal Court. (Doc. # 161 at 5-6). They contend that JCS denied them any opportunity to contest the orders by obstructing their access to the Municipal Court. (*Id.* at 6). It is well-settled that the *Rooker-Feldman* doctrine does not apply in situations where the plaintiff lacked a "reasonable opportunity to raise his federal claim in state proceedings." *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (quoting *Wood v. Orange Cty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)). Having said that, Plaintiffs cite no authority for the proposition that a non-incarcerated individual lacks a reasonable opportunity to raise a claim in state proceedings because another party discouraged the individual from contacting a court. (*See* Doc. # 161 at 5-6). Plaintiffs have not explained how JCS's admonition deprived them of "meaningful access to the courthouse," particularly given that Plaintiffs maintained the legal right to file papers with the Municipal Court or any other appropriate court. *Zabriskie v. Court Admin.*, 172 F. App'x 906, 909 (11th Cir. 2006) (affirming the dismissal of a non-prisoner's access-to-courts claim regarding access to a center for *pro se* litigants because the Due Process Clause does not require governmental officials to provide non-prisoners access to legal research resources). Unlike

---

[8] To be clear, this case is distinguishable from *Ray v. Judicial Correction Services, Inc.*, Case No. 2:12-cv-02819-RDP, because three of the four plaintiffs in that suit arguably were not initially convicted of an offense. Thus, they lacked a right to appeal their judgments and probation orders to a circuit court under Alabama law. *See* Ala. R. Crim. P. 30.1.

prisoners, Plaintiffs possessed the freedom to "seek access to additional sources of information" or legal advice from entities other than JCS. *Id.* The court is not convinced that Plaintiffs lacked a reasonable opportunity to challenge their orders of probation, either through the Municipal Court or an appeal to another state court. *Cf. Casale*, 558 F.3d at 1261 ("If [the plaintiff] believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal."). Thus, *Rooker-Feldman* preclusion applies.[9]

### B. Alternatively, Defendants are Entitled to Summary Judgment on the Unjust Enrichment Count Due to the Voluntary Payment Doctrine

A defendant is unjustly enriched if: (1) the payor "acted under a mistake of fact"; (2) the payor mistakenly relied "on a right or duty"; or (3) the defendant "engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply v. Mantiply*, 951 So. 2d 638, 654-55 (Ala. 2006) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004)). It is well settled, though, that a plaintiff's unjust enrichment claim is "precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover." *Stone v. Mellon Mortg. Co.*, 771 So. 2d 451, 456 (Ala. 2000). Thus, if a plaintiff, "with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion." *Id.* (quoting *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So. 2d 534,

---

[9] Plaintiffs' argument that a claim must be adjudicated in state court in order to be subject to *Rooker-Feldman* is unavailing. Plaintiffs rely on *Vasquez v. YII Shipping Co.*, 692 F.3d 1192, 1196 (11th Cir. 2012), where the Eleventh Circuit held that a Florida court's judgment on whether the plaintiffs' claims were subject to state *forum non conveniens* rules did not foreclose federal court review of whether those claims were justiciable under maritime law. Under the circumstances presented in *Vasquez*, the Eleventh Circuit held that the Florida judgment was not being reviewed because the Florida courts had not been asked to resolve the maritime law issue. *Id.* Nevertheless, the *Vasquez* opinion reaffirmed *Exxon Mobil*'s prohibition on reviewing and rejecting state court judgments. *Id.* That is what Plaintiffs' unjust enrichment claim seeks to do.

537 (Ala. 1995)). A mere threat of legal proceedings does not constitute duress. *Mt. Airy Ins. Co.*, 668 So. 2d at 538.

Defendants argue that they are entitled to summary judgment for Plaintiffs' unjust enrichment claims under the voluntary payment doctrine. (Doc. # 110 at 12-15). They claim that Plaintiffs voluntarily agreed to pay the monthly fees and admitted that they were not coerced into making the payments. (*Id.* at 12-13). Plaintiffs contend that Thurman agreed to the terms of probation under JCS supervision because she did not want to go to jail. (Doc. # 116 at 11). According to Plaintiffs, the Rule 56 record reveals that JCS threatened to jail probationers unless they paid the amounts owed under the probation orders. (*Id.* at 12).

Defendants rely upon *Kruse v. City of Birmingham*, 67 So. 3d 910 (Ala. Civ. App. 2011), and assert that the voluntary payment doctrine applies to fines paid for traffic tickets. In *Kruse*, the plaintiff brought an unjust enrichment claim against the City of Birmingham, among other claims, after paying fines that purportedly were time-barred. 67 So. 3d at 911. The plaintiff claimed that the city threatened to incarcerate him unless he paid the fines for parking citations issued to his vehicle. *Id.* Kruse paid those fines during a period where the city granted amnesty from prosecution for outstanding parking citations. *Id.* at 911-12. Nevertheless, he alleged that the city was unjustly enriched by retaining the fines because it attempted to collect fines after the statute of limitations for doing so had expired. *Id.* at 912. Nevertheless, the Alabama Court of Civil Appeals held that the plaintiff's unjust enrichment claim failed because he had voluntarily paid the fines. *Id.* at 916-17. It rejected the plaintiff's claim that he had acted under duress because he did not dispute his liability before paying the fines. *See id.* Plaintiffs seek to distinguish *Kruse* noting that the plaintiff in that case made payments during a period in which

Birmingham lifted the threat of incarceration for non-payment of fees. After careful analysis, the court concludes Defendants have the better side of the argument.

In *Brown v. State*, 565 So. 2d 585, 585-86 (Ala. 1990), the Alabama Supreme Court addressed whether the plaintiffs could bring a class action suit seeking a refund of fines and costs paid pursuant to traffic tickets that had not been verified before a judicial officer. The plaintiffs in *Brown* showed that their traffic tickets appeared to be verified because a trial court clerk had directed her staff to stamp her signature on tickets. *Id.* at 588-89. However, the clerk later testified that the officers who issued the tickets never appeared before her to verify the charges. *Id.* at 588. The Alabama Supreme Court acknowledged that the procedure used by the trial court violated the plaintiffs' state-law rights because state law required officers to formally accuse a defendant under oath to institute the misdemeanor charges at issue. *Id.* at 589-90.

Nevertheless, the Alabama Supreme Court held in *Brown* that the plaintiffs could not recover the fines and fees charged to them because their suit brought an untimely collateral challenge to their judgments. *Id.* at 590. The Court found no "evidence of fraud or corruption" by the trial court's officers. *Id.* And, it cited a federal court's ruling that "when one pays a fine voluntarily under a mistake of law, that fine cannot be recovered unless payment was induced by the fraud or the undue advantage of the one receiving it." *Id.* (quoting *Callahan v. Sanders*, 339 F. Supp. 814, 818 (M.D. Ala. 1971)). Because the plaintiffs in *Brown* sought "to dispose of their misdemeanor cases as expeditiously and as conveniently as possible" and did not contest their guilt of the underlying charges, the Alabama Supreme Court held that the plaintiffs could not seek reimbursement of the fines. *Id.* at 591.

Here, the court agrees with Defendants that the state-law unjust enrichment claims are barred by Alabama's voluntary payment doctrine. Plaintiffs do not claim in their opposition

brief that they lacked full knowledge of the facts when they agreed to pay probation fees to JCS so that they could receive a payment plan for their Municipal Court fines and fees. (*See* Doc. # 116 at 11-14). And, while Plaintiffs have claimed that Defendants lacked legal authority to impose their probation fees, they have not argued that Defendants lacked a *colorable* legal basis to charge the additional fees. (*See id.*). *See also Stone*, 771 So. 2d at 456 (holding that the voluntary payment doctrine applies if the recipient has a colorable legal basis for its demand). Indeed, Plaintiffs rest their challenge to Defendants' invocation of the voluntary payment doctrine on the fraud, duress, and extortion exception to the doctrine.

A review of the Rule 56 record makes plain that Plaintiffs have not presented a triable issue of whether JCS obtained the probation fees through fraud, duress, or improper pressure. First, Plaintiffs' argument that JCS unjustly obtained probation fees by threatening imprisonment fails because nothing in the Rule 56 record indicates that JCS threatened to incarcerate Plaintiffs without seeking legal process through the Municipal Court. (*See* Doc. # 85-2 at 2) (warning individuals that they could be arrested for violating terms of probation and that JCS could request revocation from the Municipal Court). Alabama law clearly provides that a threat to institute legal proceedings is not a form of improper pressure upon which an unjust enrichment claim may lie. *See Mt. Airy Ins. Co.*, 668 So. 2d at 538. Second, Plaintiffs' attempt to distinguish their unjust enrichment claim from the claim presented in *Kruse* is unavailing. As in *Kruse*, Plaintiffs agreed to pay the probation fee as part of the payment for fines imposed against them by a municipal court. Moreover, as in *Kruse*, Plaintiffs do not contest that they were liable for the traffic offenses for which the Municipal Court issued the fines. *Kruse* indicates that a threat of incarceration by a party enforcing a municipal court's order or judgment is not a form of fraud, duress, or improper pressure that can support an unjust enrichment claim. *Cf. Kruse*, 67

So. 3d at 911 (recounting the plaintiff's allegation that the city was unjustly enriched by threatening to incarcerate him for failing to pay fines that were time-barred). Accordingly, Plaintiffs' argument that Defendants cannot rely on the voluntary payment doctrine due to fraud, duress, or improper pressure fails as a matter of law.

Alternatively, even if the voluntary payment doctrine did not bar Plaintiffs' unjust enrichment claims (and, plainly, it does), Alabama Supreme Court precedent demonstrates that the unjust enrichment claims would nevertheless fail as a matter of law. *See Brown*, 565 So. 2d at 590-91. In *Brown*, the Alabama Supreme Court held that analogous claims for refunds of fines and fees paid by traffic offenders were unsuccessful collateral attacks on the criminal judgments. *Id.* at 590. As in *Brown*, Plaintiffs seek to collect amounts previously paid pursuant to an order issued in connection with an adjudicated municipal court traffic case. As a matter of Alabama state law, such a claim is an impermissible collateral attack on the municipal court's judgment. *See id.* Therefore, pursuant to *Brown*, Defendants would also be entitled to summary judgment on Plaintiffs' unjust enrichment claims.

**C.** **Plaintiffs Have Not Shown That Alabama Law Provides a Private Cause of Action for Obstruction of Law**

Defendants argue that Plaintiffs' obstruction of law claim in Count Three of the Second Amended Complaint is due to be dismissed for the lack of a private cause of action. (Doc. # 50 at 9-11). Plaintiffs respond that "this claim fits within and is allowed to proceed under the law which the Plaintiffs invoke for their unjust enrichment claim and for declaratory and injunctive relief."[10] (Doc. # 52 at 16). The court agrees with Defendants.

---

[10]    At oral argument, Plaintiffs' counsel stated that they had pled an obstruction claim under 42 U.S.C. § 1983, in addition to a state-law claim. (Doc. # 162 at 139). Plaintiffs have clarified in their supplemental brief that "they are not proceeding on a claim under 42 U.S.C. § 1983." (Doc. # 161 at 1-2).

At one time, Alabama law provided that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts." *Hardie-Tynes Mfg. Co. v. Cruse*, 66 So. 657, 661 (Ala. 1914). However, in *Martinson v. Cagle*, 454 So. 2d 1383, 1385 (Ala. 1984), the Alabama Supreme Court clarified that statement by explaining that, although an act that constitutes a crime may also serve as the basis of a civil action, civil liability does not exist automatically. Rather, civil liability exists "only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted." *Id.* at 1385. *See also Prill v. Marrone*, 23 So. 3d 1, 11 (Ala. 2009) (holding that Alabama law did not provide a private right of action for criminal conspiracy or criminal complicity).

Alabama law criminalizes the obstruction of governmental operations through intimidation, physical force, interference, or any other unlawful act. Ala. Code § 13A-10-2(a). Nothing in § 13A-10-2, though, indicates that it is intended to provide a private cause of action. Nor have the Plaintiffs cited authority where an Alabama court recognized a private cause of action for an obstruction of governmental operations that caused harm to a particular plaintiff. Because Plaintiffs' obstruction of law claim does nothing more than assert that Defendants violated a criminal statute and that Plaintiffs were thereby harmed,[11] Defendants are entitled to summary judgment for this claim.

### D.    Plaintiffs' Equal Protection Claims Fail to State a Claim for Relief

Defendants argue in their motion for summary judgment that Plaintiffs' equal protection claims fail to state a claim for relief. (Doc. # 110 at 25). Plaintiffs have not responded to this argument in their summary judgment opposition brief. In their opposition brief to the *motion to*

---

[11] (*See* Doc. # 53 at ¶ 41) ("JCS, by the wrongdoing alleged, has obstructed and violated the foregoing law, and the Plaintiffs and Class have been . . . harmed [ ] as a result.").

*dismiss*, Plaintiffs argued that, if JCS acted under color of state law, then it violated their equal protection rights by not treating similarly situated people alike. (*See* Doc. # 52 at 19). The court agrees with Defendants that this claim is not adequately pled.

Plaintiffs have argued that the equal protection claim should go forward as a wealth-based equal protection claim. The Supreme Court has issued two opinions that are relevant to the question of equal protection rights of indigent probationers. In *Williams v. Illinois*, 399 U.S. 235 (1970), the Supreme Court held that a court "may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine." *Id.* at 243. In its opinion, though, the *Williams* Court explained that a state is "not powerless to enforce judgments against those financially unable to pay a fine." *Id.* at 244. In a footnote, it referred to the State's argument that a state court could, consistent with the Equal Protection Clause, "impose a parole requirement on an indigent that he do specified work during the day to satisfy the fine." *Id.* at 244 n. 21. In *Tate v. Short*, 401 U.S. 395 (1971), the Supreme Court held that a court may not subject a defendant to imprisonment "solely because of his indigency." *Id.* at 397-98. But, again, the Supreme Court recognized that the state court could address an indigent's inability to pay the fine by directing that a defendant pay a fine in installments. *See id.* at 400 n. 5.

Plaintiffs' equal protection claim does not explain how JCS's conduct treated similarly situated individuals differently. To the extent Plaintiffs argue that JCS treated individuals that could immediately pay fines differently from those who could not do so,[12] the Second Amended Complaint does not discuss the Municipal Court's or JCS's conduct towards individuals who

---

[12] *Cf. City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").

were able to immediately pay their fines. (*See generally* Doc. # 53 at ¶¶ 39-41). Thus, the Second Amended Complaint does not adequately plead that JCS treated similarly situated individuals differently in violation of equal protection. To the extent Plaintiffs allege an equal protection claim based on JCS's unlawful administration of their probation sentences, their equal protection claim does not fall within the Supreme Court's authority from *Williams* or *Tate* because the Municipal Court did not imprison either named Plaintiff to jail for failing to pay fines or fees. *Williams* and *Tate* both acknowledge that a court can impose a different sentence on an indigent defendant than a non-indigent defendant. *Williams*, 399 U.S. at 244 n. 21; *Tate*, 401 U.S. at 400 n. 5. And, neither case forecloses a court from imposing a probationary sentence on a defendant while he or she pays fines in installments. Accordingly, Plaintiffs have not presented an plausible equal protection claim, and Defendants are entitled to summary judgment on that claim.

**E.    The Remaining Plaintiffs Lack Standing to Seek a Declaratory Judgment Regarding Violations of Statutory Maximums**

In their Second Amended Complaint, Plaintiffs seek a declaration that JCS violated state and federal law "by commanding and coercing payments of fines or fees, or charges of any kind, in excess of any such amount allowed by law, or for periods of time which exceed the maximum amount [of] time prescribed by law for probation." (Doc. # 53 at ¶ 32(b)). However, Greg Solley was the only named plaintiff in this action who allegedly faced a probation sentence exceeding the two-year statutory maximum. (*See id.* at ¶ 26). Indeed, both Carroll and Thurman completed their probation terms in less than one year.[13] (*See generally* Docs. # 99-7; 99-8).

---

[13]    And, at oral argument, Plaintiffs' counsel acknowledged that they did not allege payment of a fine, fee, or court cost above any applicable statutory maximum. (Doc. # 162 at 138-39).

Thus, the question is whether Carroll and Thurman have standing to bring this declaratory judgment claim.

Before certifying a class action, the court must review whether at least one named plaintiff has Article III standing to bring each subclaim presented in the action.[14] *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). A plaintiff seeking declaratory relief from a federal court must show "a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). A party's Article III standing to bring suit is determined by whether it had standing at the time of filing. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

In this case, both named Plaintiffs lack standing to bring the declaratory subclaim concerning administration of sentences above the relevant statutory maximums. Neither named Plaintiff was under JCS probation for more than one year, much less two years. (*See generally* Docs. # 99-7; 99-8). Plaintiffs have not alleged or argued that Carroll or Thurman paid any fine, fee, or cost above any applicable statutory maximum. (*See* Doc. # 162 at 138-39). Nor does the Rule 56 record show that they reasonably expected to be subject to a fine, fee, or cost above a statutory maximum when they filed this action. Accordingly, the court finds that Plaintiffs Carroll and Thurman lack standing to bring the declaratory subclaim in paragraph 32(b) of the Second Amended Complaint. Accordingly, that claim is due to be dismissed.

---

[14] The court may raise standing issues *sua sponte*. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 877-78 (11th Cir. 2000).

**V.      Conclusion**

For the reasons explained above, Plaintiffs' motion for partial summary judgment is due to be denied.   Defendants' motion for summary judgment is due to be granted.   An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this September 12, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE